IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| EVANGERLIST ROBINSON, | ) | Civil Action No. 4:13-823-DCN-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| CAROLYN W. COLVIN, ACTING | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits (DIB). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied.

## I.  PROCEDURAL HISTORY

The Plaintiff, Evangerlist Robinson, filed an application for DIB on March 10, 2010, alleging a disability onset date of August 11, 2005. Plaintiff requested a hearing before an administrative law judge (ALJ) after her claim was denied initially and on reconsideration. A hearing was held on September 19, 2011. The ALJ issued a decision on December 16, 2011, finding that Plaintiff was not disabled. After the Appeals Council denied Plaintiff's subsequent request for review of the ALJ's decision, the ALJ's decision became the Commissioner's final decision for purposes of judicial review under 42 U.S.C. § 405(g). See 20 C.F.R. § 404.981.

## II.  INTRODUCTORY FACTS

Plaintiff was born on January 27, 1970.  She has a college degree in criminal justice  with past relevant work as a sales clerk, a mail clerk, a customer service representative, a census

examiner, a correctional officer, and a deli operator. (Tr. 157).  Plaintiff alleges disability since

August 11, 2005 due to a shoulder injury with neck, elbow, hand problems, and headaches. (Tr. 130).

### III.  THE ALJ'S DECISION

In the decision of December 16, 2011, the ALJ found the following:

1.    The claimant last met the insured status requirements of the Social Security Act on December 31, 2010.

2.    The claimant did not engage in substantial gainful activity during the period from her alleged onset date of August 11, 2005 through her date last insured of December 31, 2010 (20 CFR 404.1571 *et seq.*).

3.    Through the date last insured, the claimant had the following severe impairments: residuals from right shoulder surgeries, obesity and neck degeneration (20 CFR 404.1520(c)).

4.    Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR  404.1520(d), 404.1525 and 404.1526).

5.    After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except no pushing/pulling with the right dominant arm; occasional climbing of ramps or stairs; occasional stooping, kneeling and crouching; no climbing of ladders, ropes or scaffolds and no crawling; no overhead reaching with the right dominant arm and avoidance of vibration, heights and dangerous machinery.  Because of her pain level, the claimant's concentration is affected such that she can only engage in simple, routine work.

6.    Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7.    The claimant was born on January 27, 1970 and was 40 years old, which is defined as a younger individual age 18-44, on the date last insured (20 CFR 404.1563).

8.    The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a

finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.    Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

11.    The claimant was not under a disability, as defined in the Social Security Act, at any time from August 11, 2005, the alleged onset date, through December 31, 2010, the date last insured (20 CFR 404.1520(g)).

(Tr. 18-25).

## IV.  STANDARD OF REVIEW

Under the Social Security Act (the Act), 42 U.S.C. § 405 (g), this court's scope of review of the Commissioner's final decision is limited to determining: (1) whether the decision of the Commissioner is supported by substantial evidence, and (2) whether the legal conclusions of the Commissioner are correct under controlling law. Myers v. Califano, 611 F.2d 980, 982-83 (4th Cir. 1988); Richardson v. Califano, 574 F.2d 802 (4th Cir. 1978). "Substantial evidence" is that evidence which a "reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 390. Such evidence is generally equated with the amount of evidence necessary to avoid a directed verdict. Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). The Court's scope of review is specific and narrow. It does not conduct a de novo review of the evidence, and the Commissioner's finding of non-disability is to be upheld, even if the Court disagrees, so long as it is supported by substantial evidence. 42 U.S.C. § 405 (g) (1982); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

The general procedure of a Social Security disability inquiry is well established. Five questions are to be asked sequentially during the course of a disability determination. 20 C.F.R. §§

404.1520, 1520a. An ALJ must consider: (1) whether the claimant is engaged in substantial gainful activity, (2) whether the claimant has a severe impairment, (3) whether the claimant has an impairment which equals a condition contained within the Social Security Administration's official listing of impairments (at 20 C.F.R. Pt. 404, Subpart P, App. 1), (4) whether the claimant has an impairment which prevents past relevant work, and (5) whether the claimant's impairments prevent him from any substantial gainful employment.

Under 42 U.S.C. §§ 423 (d)(1)(A) and 423(d)(5), pursuant to the Regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." See 20 C.F.R. § 404.1505(a); Blalock, 483 F.2d at 775.

If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. § 404.1503(a); Hall v. Harris, 658 F.2d 260 (4th Cir. 1981). An ALJ's factual determinations must be upheld if supported by substantial evidence and if proper legal standards were applied. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

A claimant is not disabled within the meaning of the Act if he can return to his past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. SSR 82-62. The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423 (d)(5). He must make a prima facie showing of disability by showing he was unable to return to his past relevant work. Grant v. Schweiker, 699 F. 2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the national economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy that the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. Id. at 191.

## V.  ARGUMENTS

The Plaintiff's arguments consist of the following:

1.      The ALJ did not explain his findings regarding the Plaintiff's residual functional capacity, as required by Social Security Ruling 96-8P.

2.      The Plaintiff has severe impairments that were not properly considered by the ALJ.

3.      The ALJ failed to properly evaluate Plaintiff's credibility.

4.      The ALJ erred in failing to consider a closed period of disability.

## VI.  DISCUSSION AND ANALYSIS

**RFC Analysis**

Plaintiff argues that the ALJ failed to explain his findings regarding her RFC as required by SSR 96-8p.  This ruling provides that

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any

material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8. The ruling goes on to emphasize that "the RFC assessment must always consider and address medical source opinions." SSR 96–8p. While the ALJ is not required to discuss every piece of evidence, if he does not mention material evidence, the court cannot say his determination was supported by substantial evidence. See Arnold v. Sec'y of Health, Educ. & Welfare, 567 F.2d 258, 259 (4th Cir.1977) ("The courts ... face a difficult task in applying the substantial evidence test when the Secretary has not considered all relevant evidence. Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty ....").

As set forth above, the ALJ made the following RFC determination,

> After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except no pushing/pulling with the right dominant arm; occasional climbing of ramps or stairs; occasional stooping, kneeling and crouching; no climbing of ladders, ropes or scaffolds and no crawling; no overhead reaching with the right dominant arm and avoidance of vibration, heights and dangerous machinery. Because of her pain level, the claimant's concentration is affected such that she can only engage in simple, routine work.

(Tr. 19). Plaintiff argues that the ALJ did not properly consider opinions from physical therapist, Tracy Hill; state agency physician, Dr. Darla Mullaney; and examiner, Dr. Robert Brabham. As an initial matter, none of these medical sources is a treating source, and, thus, their opinions are not entitled to controlling weight. 20 C.F.R. § 404.1527(c)(2); SSR 96-2p, 1996 WL 374188.

First, Plaintiff argues that, although the ALJ considered Hill's opinion and "emphasized" that it was consistent with the RFC, the ALJ failed to include Hill's opinion that Plaintiff was limited to sedentary work, avoiding sitting for over 45 minutes at a given time. (Tr. 23-24, 442). The ALJ recognized that Hill offered this opinion, but also noted that the 45 minute limitation on sitting was

self-reported by Plaintiff. (Tr. 22). The ALJ noted that "[t]he clinical picture reflected in these treatment records show quite limited objective findings to support the degree of limitations asserted by the claimant." (Tr. 23). Indeed, it is undisputed that Plaintiff reported no sitting problems to any of her treating physicians and no other medical opinion limited Plaintiff's ability to sit for any period of time. Furthermore, an ALJ may accord less weight to an opinion that is based on claimant's self-reported symptoms. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir.2001). Thus, the ALJ did not err in his consideration of the opinion offered by Hill.

Next, Plaintiff argues that the ALJ erred in failing to include in the RFC the opinion of state agency physician Dr. Darla Mullaney that Plaintiff was limited to only occasional handling and fingering of the right hand. (Tr. 513-15). Although the ALJ states that his "conclusion that [Plaintiff] is not disabled is further supported by the opinions of the State agency medical consultants" (Tr. 25), he does not specifically address the opinion offered by Dr. Mullaney. The ALJ is obligated to consider all evidence, not just that which is helpful to his decision. Gordon v. Schweiker, 725 F.2d 231, (4th Cir. 1984); Murphy v. Bowen, 810 F.2d 433, (4th Cir. 1987).

Plaintiff argues that "[t]he restriction to unskilled sedentary work with no ability to repetitively use the dominant upper extremity for fine or gross dexterity would generally be considered vocationally fatal," and, thus, the ALJ's failure to consider the handling and fingering restrictions opined by Dr. Mullaney is significant. (Pl. Brief 24). Defendant, however, argues that any error here was harmless. One of the two jobs identified by the vocational expert (VE), surveillance monitor (DOT # 379.367-010), does not require more than occasional fingering or handling. (Tr. 184). The VE testified that there are 125,000 surveillance monitor jobs nationally and 2,000-3,000 in South Carolina. (Tr. 53-54). The availability of this job alone is sufficient to satisfy the Commissioner's burden to demonstrate that jobs exist in significant number throughout

7

the national and local economy. See, e.g., Hicks v. Califano, 600 F.2d 1048, 1051 n. 2 (4th Cir.1979) (holding that as few as 110 jobs locally may constitute a significant number of jobs). Thus, the undersigned finds to the extent the ALJ erred in failing to consider the opinion of Dr. Mullaney, the error was harmless.

Finally, Plaintiff argues that the ALJ failed to properly consider the opinion from psychologist Dr. Robert Brabham. Dr. Brabham conducted a psychological and vocational evaluation of Plaintiff on November 5, 2009. (Tr. 430). Dr. Brabham opined that Plaintiff's limitations including reaching, pushing, and pulling as a result of right arm pain were such that vocationally any sedentary work was precluded. Furthermore, any jobs that required her to use her arms repetitively and continuously while meeting minimal production standards would be precluded. According to Dr. Brabham's evaluation, Plaintiff would be unable to sustain any repetitive activity for an 8-hour basis, day after day. Based on his review of the medical evidence and his observations during the evaluation, Dr. Brabham determined that Robinson would be unable to effectively perform the essential duties in any gainful work activity. (Tr. 431-39).

The ALJ considered the opinion of Dr. Brabham and found that he could not give the opinion controlling weight "as it is not substantiated by the evidence, when considered in its entirety. [Dr. Brabham's] conclusions are based upon the claimant's subjective narrative and not upon any objective findings. The claimant does not receive mental health treatment or medications for a mental health disorder." (Tr. 23).

As an initial matter, the RFC includes limitations of no pushing or pulling or overhead reaching with the right dominant arm, and, thus, is not inconsistent with Dr. Brabham's opinion in this respect. (Tr. 19). Dr. Brabham opined that, given such restrictions, "any sedentary work, which might otherwise have been suggested, is precluded." (Tr. 438). However, the VE testified that there

were sedentary jobs in significant numbers that could be performed with these restrictions.  (Tr. 25, 53-54).  It is the responsibility of the of the ALJ to weigh the evidence and resolve conflicts in that evidence.  See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir.1990) (It is the responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence); Smith v. Chater, 99 F.3d 635, 638 (4th Cir.1996) ("The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court"); Carlson v. Shalala, 999 F.2d 180, 181 (7th Cir.1993) ("What we require is that the ALJ sufficiently articulate his assessment of the evidence to 'assure us that the ALJ considered the important evidence ... [and to enable] us to trace the path of the ALJ's reasoning.'"); Lee v. Sullivan, 945 F.2d 687, 692 (4th Cir.1991) (ALJ not required to include limitations or restrictions in his decision that he finds are not supported by the record).  Furthermore, the ALJ is not required to give any special significance to opinions offered by medical sources regarding issues reserved to the Commissioner, such as the claimant's ability to work.  SSR 96-5p provides,

> Medical sources often offer opinions about whether an individual who has applied for title II or title XVI disability benefits is "disabled" or "unable to work," or make similar statements of opinions. In addition, they sometimes offer opinions in other work-related terms; for example, about an individual's ability to do past relevant work or any other type of work. Because these are administrative findings that may determine whether an individual is disabled, they are reserved to the Commissioner. Such opinions on these issues must not be disregarded. However, even when offered by a treating source, they can never be entitled to controlling weight or given special significance.

SSR 96-5p,  SSR 96–5p, 1996 WL 374183, at *5; see also 20 C . F.R. § 404.1527(e) (stating an ALJ does not have to "give any special significance to the source of an opinion on issues reserved to the Commissioner," such as an opinion that the claimant is disabled, the claimant's impairment or impairments meets or equals a listing, or the claimant has a certain residual functional capacity).  As such, significant evidence supports the ALJ's decision in this respect.

Dr. Brabham also opines that Plaintiff could not perform any jobs that require repetitive and continual use of her arms while meeting minimal production standards. (Tr. 438). However, the ALJ did not err in finding that this opinion is not substantiated by the evidence. Dr. Brabham conducted Plaintiff's evaluation in November of 2009, but appears to have only relied on records through December of 2007. (Tr. 433-37). Of the medical records discussed by Dr. Brabham, none of them indicate an inability by Plaintiff to continually and repetitively use her arms. (Tr. 433-37). In addition, Plaintiff's physical therapist and the state agency physician opined that Plaintiff could perform a limited range of sedentary work activity. (Tr. 442, 513-15). With respect to Dr. Brabham's opinion that Plaintiff has an inability to function at optimal levels while taking her anti-depressant medications (Tr. 438), the record reveals and the ALJ notes that the Plaintiff was not receiving any mental health treatment or taking any medications for a mental health disorder at the time Dr. Brabham completed his evaluation. (Tr. 23, 428). It is not within the province of this court to "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Craig v. Chater, 76 F.3d 585, 589 (4th Cir.1996). Thus, although there may be some evidence in the record contrary to the ALJ's decision, substantial evidence exists to support the ALJ's decision not to give Dr. Brabham's opinion controlling weight.

In sum, the ALJ did not err in explaining his findings with respect to Plaintiff's RFC.

**Severe Impairments**

Plaintiff next argues that the ALJ erred in finding that her depression was not a severe impairment. A severe impairment is defined by the regulations as "any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities." 20 C .F.R. §§ 404.1520(c), 416.920(c). Plaintiff bears the burden of demonstrating that she has a severe impairment. See Bowen v. Yuckert, 482 U.S. 137, 146 n. 5, 107 S.Ct. 2287, 96 L.Ed.2d 119

(1987). However, "[a]n impairment can be considered as 'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir.1984) (quoting Brady v. Heckler, 724 F.2d 914, 920 (11th Cir.1984)) (internal quotation marks omitted). The severe impairment inquiry "is a de minimis screening device to dispose of groundless claims." McCrea v. Comm'r, 370 F.3d 357, 360 (3rd Cir.2004) (citation omitted).

However, Plaintiff must show that any alleged error in finding Plaintiff's depression to be non-severe harmed her.  See Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir.1994) (affirming denial of benefits where the ALJ erred in evaluating a claimant's pain because "he would have reached the same result notwithstanding his initial error"). A finding of a single severe impairment at step two of the sequential evaluation is enough to ensure that the factfinder will progress to step three. See Carpenter v. Astrue, 537 F.3d 1264, 1266 (10th Cir.2008) ("[A]ny error here became harmless when the ALJ reached the proper conclusion that [claimant] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence."). Therefore, because the ALJ considers all impairments, whether severe or not, at later steps, see 20 C.F.R. § 404.1545(a)(2), any error at step two is harmless provided that the ALJ considers that impairment in subsequent steps. See Singleton v. Astrue, No. 9:08–1982–CMC, 2009 WL 1942191, at *3 (D.S.C.2009) ("Even were the court to agree that Plaintiff's depression should have been found 'severe' at step two, any error would be harmless because if Plaintiff makes a threshold showing of any 'severe' impairment, the ALJ continues with the sequential evaluation process and considers all impairments, both severe and nonsevere."); see also Carpenter v. Astrue, 537 F.3d 1264, 1266 (10th Cir.2008) (holding that any error at step two of the sequential evaluation process becomes harmless if the ALJ "reached the

11

proper conclusion that [the claimant] could not be denied benefits at step two and proceeded to the

next step of the evaluation sequence").

In his opinion, the ALJ thoroughly addressed his reasons for finding Plaintiff's depression

to be non-severe:

> The claimant's medically determinable mental impairment of depression, considered singly and in combination, did not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and were therefore nonsevere.
> In making this finding, I have considered the four broad functional areas set out in the disability regulations for evaluating mental disorders and in section 12.00C of the Listing of Impairments. (20 CFR, Part 404, Subpart P, Appendix 1). These four broad functional areas are known as the "paragraph B" criteria.
> The first functional area is activities of daily living. In this area, the claimant has mild limitation. The next functional area is social functioning. In this area, the claimant has mild limitation. The third functional area is concentration, persistence or pace. In this area, the claimant has mild functional limitation. The fourth functional area is episodes of decompensation. In this area, the claimant had experienced no episodes of decompensation, which have been of extended duration. The evidence has documented that the claimant is able to perform some household chores, shops, and drives an automobile. She prepares some meals and there is no evidence she experiences any difficulties getting along with others. Dr. Phillips noted the claimant was able to drive and was well groomed. She was not on any psychiatric medications, nor has she been hospitalized secondary to any psychiatric condition.
> Because the claimant's medically determinable mental impairments caused no more than "mild" limitation in any of the first three functional areas and "no" episodes of decompensation which have been of extended duration in the fourth area, they [sic] were nonsevere (20 CFR 404.1520a(d)(1)).

(Tr. 18-19).

Later, at step four, the ALJ more fully addressed the medical evidence regarding Plaintiff's

depression:

> On May, 7, 2009, . . . [Plaintiff] had complaints of suicidal ideations and additional therapy for psychological testing was recommended. . . .
> On May 20, 2009, . . . Dr. Odom . . . recommended a psychological pain management evaluation and treatment because of depression and suicidal ideations that she experienced. . . .
> She was treated on September 22, 2009, at Palmetto Health for voluntary admission because of depression and questionable psychosis; however, when she was in the

inpatient unit, she indicated that she did not feel she needed psychiatric hospitalization, as she was not psychotic nor suicidal. It was not felt that she was a danger to herself or others and she was allowed to leave without being admitted. . . .

Dr. Robert Phillips evaluated the claimant on July 28, 2010, and concluded that the claimant was on no psychotropic medications and because there was no other psychological diagnosis involved and no history of a mental health problem, Dr. Phillips was of the opinion there was no somatoform disorder. The claimant demonstrated the ability to maintain most of her activities of daily living and was able to interact appropriately. In addition, Dr. Phillips noted the claimant was somewhat limited in her ability to perform routine work in a normal work setting and the limits were based on her pain and depressive reaction to the pain.

(Tr. 21-22, 23).

Because the ALJ considered Plaintiff's depression at step four of the sequential process, any error in finding the depression to be non-severe was harmless.

**Credibility**

Plaintiff contends that the ALJ improperly evaluated her subjective complaints. Under Craig v. Chater, 76 F.3d 585, 591–96 (4th Cir.1996), subjective complaints of pain are evaluated in two steps. First, there must be documentation by objective medical evidence of the presence of an underlying impairment that would reasonably be expected to cause the subjective complaints of the severity and persistence alleged. Not until such underlying impairment is deemed established does the fact-finder proceed to the second step: consideration of the entire record, including objective and subjective evidence, to assess the credibility of the severity of the subjective complaints. See also 20 C.F.R. § 404.1529(b); Social Security Ruling (SSR) 96–7p, 61 Fed.Reg. 34483–01, 34484–85.

The ALJ may choose to reject a claimant's testimony regarding his pain or physical condition, but he must explain the basis for such rejection to ensure that the decision is sufficiently supported by substantial evidence. Hatcher v. Sec'y, Dep't of Health & Human Servs., 898 F.2d 21, 23 (4th Cir.1989) (quoting Smith v. Schweiker, 719 F.2d 723, 725 n. 2 (4th Cir.1984)). "The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence

in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96–7p. Furthermore, as stated above, when conflicting evidence is presented, it is up to the ALJ to resolve those inconsistencies. Hays v. Sullivan, 907 F.2d, 1453, 1456 (4th Cir.1990). It is not the responsibility of the Court to determine the weight of the evidence. Id.

Plaintiff argues that the ALJ erred by taking into consideration Plaintiff's lack of narcotic pain medication without conducting a proper analysis under SSR 96-7p, which requires the ALJ to consider whether the claimant has a justifiable reason for not following prescribed treatment. Indeed, the record reveals that Plaintiff attempted many types of treatment for her pain, including several different pain medications, and none were successful. (Tr. 240, 247, 273, 258, 255, 323-24, 320-21). However, this is not the only basis upon which the ALJ made his credibility findings. The ALJ noted that limited findings supported the degree of physical limitations asserted by Plaintiff, she performs some household chores, attends church, and has a driver's license. (Tr. 23). He also noted that the records of her physicians do not show that she reported to them limitations of the serverity she alleged. (Tr. 23). Indeed, the medical records reveal Plaintiff's pain was noted to be out of proportion to the findings on several examinations (Tr. 21, 227, 245, 341, 350, 492), Plaintiff generally had good or full range of motion of her shoulder (Tr 22, 227, 247, 258, 264, 341, 455, 492), there was no atrophy (Tr. 22, 455), and she had good grip strength (Tr. 22, 323, 455).

Here, the ALJ conducted the proper credibility analysis under the Social Security Rules and substantial evidence exists to support his finding that Plaintiff's subjective complaints were not entirely credible. Therefore, the ALJ did not err in his assessment of Plaintiff's credibility.

**Closed Period of Disability**

Finally, Plaintiff argues that the ALJ erred in failing to consider a closed period of disability. Plaintiff points to several medical records in 2005, 2006, 2007, and 2008, in which Drs. Fowble and Green indicated that Plaintiff should stay out of work. (Tr. 274, 273, 272, 269, 267, 265, 263-64, 260, 258, 251-52, 249-50, 245-46, 232, 227-28). Plaintiff submits that her treating physicians and orthopaedic specialists continually kept her out of work after her initial surgery and that the ALJ failed to consider, at the very least, a closed period of time in which her doctors determined that she could not work. However, both doctors knew that they were treating Plaintiff's shoulder as a result of a work related injury and that she had a Workers' Compensation claim pending (Tr. 245, 247, 263, 271). Accordingly, when they said that they would "keep her out of work" or "hold her out of work" (e.g. Tr. 268, 269), it is reasonable to conclude they were referring to Plaintiff's last work as a sales clerk in a department store. This finding is consistent with the ALJ's determination that Plaintiff could not return to that job because the demands exceeded Plaintiff's RFC (Tr. 24). The inability to return to one's past relevant is not sufficient to meet the definition of disability under the Social Security Act. See 42 U.S.C. § 423(d)(1)(A). Further, the ALJ specifically found that Plaintiff "was not under a disability, as defined in the Social Security Act, at any time from August 11, 2005, the alleged onset date, through December 31, 2010." (Tr. 25). The undersigned finds no error here.

## VII.  CONCLUSION

This Court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence. Richardson, 402 U.S. at 390. Even where the Plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision. Blalock,

483 F.2d at 775. The Commissioner is charged with resolving conflicts in the evidence, and this

Court cannot reverse that decision merely because the evidence would permit a different conclusion.

Shively v. Heckler, 739 F.2d at 989. As previously discussed, despite the Plaintiff's claims, he has

failed to show that the Commissioner's decision was not based on substantial evidence. Based upon

the foregoing, this Court recommends that the Commissioner's decision be AFFIRMED.


       s/Thomas E. Rogers, III
      Thomas E. Rogers, III
July 31, 2014                 United States Magistrate Judge
Florence, South Carolina

16